STOKER, Judge.
Lyle Decuir appeals the dismissal of his consolidated actions against Richard, Cleo and Theresa Tassin, and against the mayor and mayor pro tern of Marksville, seeking relief from the alleged violation of certain provisions of Marksville’s zoning ordinance. We render separate opinions in the two cases; the other case is Decuir v. Tassin, 488 So.2d 405 (La.App. 3d Cir.1986).
Lyle Decuir and Cleo Tassin owned adjacent properties on the west side of South Main Street in Marksville. Several years before this case, Cleo Tassin applied for and was eventually successful in obtaining a rezoning of his lot from Residential A-2 (single-family dwelling) to Residential A-3 (multi-family dwelling), over Decuir’s objection. See Tassin v. City of Marksville, 411 So.2d 1240 (La.App.3d Cir.1982), and Decuir v. Town of Marksville, 426 So.2d 766 (La.App.3d Cir.1983), writ denied, 430 So.2d 83 (La.1983).
Cleo’s son, Richard (hereinafter “Tas-sin”), has allegedly bought his father’s property, though the sale has not been recorded. Tassin applied for a building permit to construct a six-unit apartment complex (referred to as a “six-plex”) on the property. The city clerk refused to issue the permit because of opposition from De-cuir. Tassin contacted the mayor, Dr. Richard Michel, who inspected the area, decided that Tassin’s plat complied with the City’s zoning ordinance, and issued the permit on March 11, 1985. At a Town Council Meeting the next day, a delegation including Lyle Decuir objected to the issuance of the permit, but no action was taken by the council. Tassin poured the slab for the six-plex despite warnings from Decuir’s attorney that suit was being filed. A survey made at Decuir’s request shows the front building line to be twenty-two feet, allegedly in violation of Section 2.504 of the zoning ordinance, which reads:
“Area Regulations
“1. Yard
a. Front Yard: Front building lines shall conform to the average building lines in a developed block but in no case shall it be less than twenty (20) feet.”
Decuir filed a petition in the district court for a writ of mandamus against Dr. Michel and Marksville’s mayor pro tem, asking that those officials be ordered to enforce the zoning ordinance by removing the construction. He also sued the Tas-sins, seeking a declaration that they were in violation of the ordinance and an order to cease construction. The two actions were consolidated for trial.
The trial court concluded that the building was in substantial compliance with the ordinance and that the building permit was valid. He dismissed the claims at plaintiff’s costs. Decuir appeals. We affirm, on different grounds.
The Marksville zoning ordinance provides for an administrative procedure in the administration, enforcement and appeal of its provisions:
“Section 3.1 Administration and Enforcement
An administrative official designated by the Council shall administer and enforce this ordinance. He may be provided with the assistance of such other persons as the Council may direct.
If the administrative official shall find that any of the provisions of this ordinance are being violated he shall notify in writing the persons responsible for such violations, indicating the nature of the violations and ordering the action necessary to correct it. He shall *404 order discontinuance of illegal use of land, buildings, or structures, removal of illegal buildings or structures or of additions, alterations, or structural changes thereto; discontinuance of any illegal work being done; or shall take other action authorized by law to insure compliance with or to prevent violation of its provisions.
Section 3.2 Duties of Administrative Official, Board of Adjustment, Council, and Courts on Matters of Appeal It is the intent of this ordinance that all questions of interpretation and enforcement shall be first presented to the administrative official and that such questions shall be presented to the Board of Adjustment only on appeal from the decision of the administrative official and that recourse from the decision of the Board of Adjustment shall be to the courts as provided by law.”
[[Image here]]
“Section 7.1 Creation of Board
There shall be a Board of Adjustment, the membership, terms of office, and rights and duties of which shall be as provided in Title 33, Section 4727 of the Louisiana Revised Statutes as amended. The Board shall adopt rules in accordance with the provisions of this Section. Meetings for the Board shall be held at the call of the chairman and at such times as the Board may determine. All meetings shall be open to the public and proceeded by due advertisement.
“Section 7.2 Powers of the Board
7.201 The Board shall hear and decide upon:
1. Appeals from alleged error in the building inspector’s decision;
2. Interpretation of the provisions of this ordinance;
3. Appeals for variances where exception and peculiar hardship would be caused by enforcement of the regulations in this ordinance and where such variance would not substantially deviate from the intent of this ordinance but not otherwise.
7.202 The Board shall not be authorized to grant variances in the use of land or to take any other action the result of which would constitute a change in the district boundaries. The Board shall always act with due consideration to promote the public health, safety, convenience, and welfare, encouraging the most appropriate use of land and conserving property values; shall permit no building or use detrimental to a neighborhood and may prescribe appropriate conditions and safeguards in each case. Such appropriate conditions and safeguards may include, among other things, provisions for the screening of parking areas by walls, fences, and plantings, and other such measures.”
[[Image here]]
“Section 7.5 Appeals From the Board of Adjustment
Any person or persons or any Board, taxpayer, department, or bureau of the town aggrieved by any decision of the Board of Adjustment may seek review by a court of record of such decision in the manner provided by the laws of the State of Louisiana.”
LSA-R.S. 33:4727 authorizes the establishment of the board of adjustment, and sets forth guidelines as to its structure and function.
Testimony adduced at trial showed that Dr. Michel acted as the administrative official. When Decuir found himself aggrieved by Dr. Michel’s actions, his proper recourse was to the board of adjustment, not to the district court. Since he has not exhausted his administrative remedies, we cannot provide judicial relief. State v. Donelon, 173 So.2d 24 (La.App. 4th Cir.1965), writ denied, 247 La. 796, 174 So.2d 534 (1965). In this case the board of adjustment would serve an important function in reviewing the mayor’s interpretation of the ordinance. In particular, the definitions of certain terms must be clarified to determine whether the land is used for “urban *405 purposes,” whether it is “developed,” and where the boundaries of the block are located. A local board would be in a much better position to consider these matters.
The record contains testimony suggesting that no board of adjustment has ever been appointed. However, the effect on the issues in this case of the existence or nonexistence of the board, mandated by Section 7.1 of the Marksville zoning ordinance, is not before us; consequently we make no comment on this matter.
For the foregoing reasons, the plaintiffs consolidated claims are dismissed, without prejudice to any action he might have once he has exhausted his administrative remedies. Costs of both the trial and appellate courts are assessed to the plaintiff.
AFFIRMED.